**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**THE TRUSTEES FOR THE IRON**
**WORKERS ST. LOUIS DISTRICT**
**COUNCIL PENSION TRUST,**

      **Plaintiffs,**

**v.**

**LE RAE M. EDWARDS,**

      **Defendant.**                          **Case No. 10-cv-73-DRH**

## <u>MEMORANDUM & ORDER</u>

**HERNDON, Chief Judge:**

### I.  <u>Introduction</u>

This matter was before the Court on Plaintiffs' Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (Doc. 5).  Plaintiffs seek the reimbursement of certain payments from the Pension Plan, which they claim were mistakenly made to Defendant as the surviving spouse beneficiary of her husband, who was a Plan participant.  Plaintiffs claim Defendant was to receive one lump sum payment of $56,103.34.  However, she received eight additional payments, each in the amount of $56,103.34.  Therefore, Plaintiffs now seek to recover $448,826.72, in "mistaken" Pension Plan payments.

In an expedited hearing on January 29, 2010 (Doc. 8), the Court granted a TRO, the written order issuing on February 1, 2010 (Doc. 9), but declined to issue a preliminary injunction at that time.  Instead, the Court conducted a preliminary injunction hearing on February 8, 2010 (Doc. 16), taking the matter under advisement.  A further order was issued following the preliminary injunction hearing (Doc. 15), whereby the Court, pursuant to the Parties' agreement to amend the TRO, directed that $206,802.19 from Defendant's Savings Account and $112,700.00 from her Checking Account be paid into the Court registry, to be held on deposit, pending further resolution of this case.

Also on February 8, 2010, after the preliminary injunction hearing, the Court issued an order (Doc. 13) directing Plaintiffs to file a memorandum tracing the proceeds at issue in this case.  Plaintiffs filed said memorandum on February 11, 2010 (Doc. 17).  The following day, the Court issued an order (Doc. 18) appointing counsel for Defendant, finding that the requisite elements had been met under ***Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)**.  The Court also granted Plaintiffs' Motion to Continue Injunction (Doc. 19), finding that additional time was necessary for Defendant's newly-appointed counsel to review the case file.  Thus, the Court extended its TRO, issued February 1, 2010 (as amended by its February 8, 2010 order), through February 26, 2010 (Doc. 20).  During the interim, Defendant filed a Motion to Delay Ruling on the Preliminary Injunction (Doc. 23), which the Court granted (Doc. 24), again extending its TRO, as amended, through April 7, 2010.  Recently, Plaintiffs have filed a Renewed Motion for Preliminary Injunction and

Motion for Expedited Ruling on the Merits (Doc. 26), to which Defendant has responded (Doc. 27) and Plaintiffs replied (Doc. 28).  Thus, as part of this Order, the Court will also consider Plaintiffs' Renewed Motion and the related filings (Docs. 26, 27 & 28), as well as Plaintiffs' Memorandum Regarding Traceable Proceeds (Doc. 17)

The Court specifically notes that in her Response (Doc. 27, ¶ 1), Defendant states that she "has no objection to a Preliminary Injunction being issued for the funds being held in the Court's registry [to] remain in the Court's registry pending an adjudication of Plaintiffs' Complaint."  However, she questions whether Plaintiffs have properly shown that the proceeds at issue can be properly traced to the 2008 Pontiac Torrent, asserting that her mother is a co-owner of the vehicle and additional payments were made from Defendant's own funds towards the vehicle purchase (*Id*. at ¶ 5).  She also argues that because some of her own funds were used to purchase a house located at 202 South Park Street, Ava, Illinois, the proceeds also used to purchase the house are now "wholly intermingled" with her own funds and are "no longer particularly identifiable" (*Id*.).  In support of her argument that the vehicle and house should not be considered as part of the proceeds of which Plaintiffs seek reimbursement, Defendant cites ***Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)** (*Id*. at ¶ 4).  In their Reply, Plaintiffs contend that they are, in fact, entitled to a constructive trust on any proceeds from the mistaken payments traceable to either the purchase of the 2008 Pontiac Torrent or the house located in Ava, Illinois, citing to ***Lumenite Control Technology, Inc.***

***v. Jarvis*,** 252 F. Supp. 2d 700, 704 **(N.D. Ill. 2003)** in support (Doc. 28, pp 1-2).

After taking the Parties' briefs, oral arguments, and evidence presented at the preliminary injunction hearing under advisement, in accordance with **FEDERAL RULE OF CIVIL PROCEDURE 52**, the Court finds and concludes the following, as discussed herein.

## II.  Findings of Fact

1.     Plaintiffs are the Trustees of the Iron Workers St. Louis District Council Pension Trust.

2.     Plaintiffs have filed suit against defendant Le Rae Edwards to recover certain Pension Plan payments and for equitable relief under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a), pursuant to Section 3.08(A) of the Plan.[1]

3.     Defendant is an individual and surviving spouse of Gregory Edwards,

---

[1]  Plaintiffs allege that Section 3.08(A) of the Pension Plan reads as follows:

If an Employee or former Employee dies prior to becoming a Pensioner and such person has previously accumulated at least 5 years of Contribution Service Pension Credits, including at least 3/10 of a Pension Credit in a Pension Credit Year in the three-year period preceding death, a Death Benefit will be payable to his designated Beneficiary.

*** 

If the Employee or former Employee has a Surviving Spouse eligible for the Preretirement Surviving Spouse Pension, this Death Benefit is not payable; except if payments of such monthly benefits will not start for 12 or more months following his death, the Surviving Spouse may elect to receive the Death Benefit in place of all or a portion of the total Actuarial Present Value of the Preretirement Surviving Spouse Pension.  The Preretirement Surviving Spouse Pension will be actuarially reduced to reflect this lump-sum distribution.

(Doc. 2 - Verified Comp., ¶ 9.)

a former Participant in the Pension Plan who died on July 20, 2008.[2]

      4.    On March 4, 2009, Defendant signed a Lump Sum Consent Form, which sought a lump-sum distribution of the entire Death Benefit attributable to the death of her spouse, Gregory Edwards, under the Plan.[3]  This Form was submitted to the Plan Administrator, American Benefit Plan Administrators, Inc. ("ABPA").

      5.    ABPA sent Defendant a letter, dated March 17, 2009, which explained that pursuant to her request, the benefit under the Plan would be processed as a Lump Sum Benefit, in the amount of $56,103.34, after taxes.

      6.    A check in the amount of $56,103.34 from Plan funds was issued by ABPA, dated April 1, 2009.

      7.    ABPA sent Defendant eight additional monthly payments of $56,103.34, by check, from May 2009 through December 2009, totaling $448,826.72.

      8.    Defendant deposited these eight additional checks into her accounts (a Savings Account and a Checking Account) at the First State Bank of Campbell Hill.

      9.    In January 2010, ABPA sent Defendant two separate letters, explaining that it had mistakenly overpaid the benefit funds as a "a result of an inexplicable error," in an amount totaling $448,826.72.  ABPA requested that Defendant refund

---

[2]  Plaintiffs also allege that Defendant's spouse, at the time of his death, was considered an "Employee," as defined by the Plan (Doc. 2 - Verified Comp., ¶ 8).

[3]  The Court notes a discrepancy between the Section of the Plan Plaintiffs seek to enforce, Section 3.08(A) of the Plan and the Lump Sum Payout Consent Form, signed by Defendant on March 4, 2009 (Doc. 2, Ex. 1).  This form references Section 3.09(A) of the Plan.  The Court is currently unaware whether this is a typographical error within the Form itself, or whether these two provisions of the Plan are related, as the entire Plan is not before the Court.

the overpayment in full.

10.    Defendant has not refunded any of the requested amount to Plaintiffs.

11.    Before the events giving rise to this suit, Defendant was severely injured in an automobile accident in September 2006.  As a result, she has suffers from partial brain damage, which affects her ability to comprehend and process information as well as she did before the accident.  However, Defendant's diminished mental capacity has not yet required her to have an appointed guardian or other power of attorney.

12.    During the hearing, it was also established that Defendant suffers certain physical limitations from the accident.

13.    Due to her current mental and physical impairments, Defendant receives  Social Security Disability Benefits for herself and for her son, who is a minor.

14.    Of the $448,826.72 in "mistaken" Pension Plan payments, made from May 2009 through December 2009, Defendant deposited $ 376,913.36 into her Savings account and $ 70,603.34 into her Checking Account with First State Bank of Campbell Hill.

15.    Defendant transferred $250,000.00 from her Savings Account to her Checking Account in two separate transactions on January 28, 2010 and January 29, 2010.  As of January 29, 2010, Defendant's Savings Account had a balance of $206,802.19.

16.    On August 4, 2009, Defendant withdrew $24,330.22 from her Checking

Account in a wire transfer to purchase her current vehicle, a 2008 Pontiac Torrent.

17.     On January 29, 2010, Defendant made withdrawals from her Checking Account totaling $160,000.00 ($40,000.00 in cash and $120,000.00 in a cashier's check).  Defendant used the $120,000.00 to purchase her house located at 202 S. Park St., Ava, Illinois 62907 (the "Ava house") and gave her father a loan in the amount of $40,000.00.

18.     On February 1, 2010, the closing balance of Defendant's Checking Account was $115,794.01.

19.     On February 8, 2010, the Court issued an order, amending its TRO pursuant to the Parties' agreement, directing that the sum of $112,700.00 be transferred from Defendant's Checking Account and the sum of $206,802.19 be transferred from Defendant's Savings Account to the Court's registry, to be held on deposit pending further resolution of Plaintiffs' suit.  Due to this court-ordered transfer of the funds Plaintiffs contend are traceable as Plan proceeds, Defendant's Checking and Savings Accounts at the First State Bank of Campbell Hill are no longer subject to the TRO.  In addition, Defendant was allowed access to the remaining balance of $3,794.01 in her Checking Account.

20.     Defendant has recovered the $40,000.00 loan proceeds from her father and this amount has been placed in her attorney's trust account, awaiting further direction from the Court.

### III. **Conclusions of Law**

21.   As "fiduciaries," defined in Sections 3(21)(A) of the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(21)(A),
Plaintiffs are empowered to bring this action pursuant to Section 502(a)(3) of ERISA,
29 U.S.C. § 1132(a)(3).

22.   Under Section 502(a)(3) of ERISA, Plaintiffs are only able to seek
restitution in equity, generally in the form of a constructive trust or equitable lien
placed upon any proceeds of the property or money which has been identified as
properly belonging to Plaintiffs which can be clearly traced to funds or property in
the Defendant's possession.  ***See Knudson*, 534 U.S. at 213-14; *see also Sereboff
v. Mid Atlantic Med. Serv., Inc.*, 547 U.S. 356, 362-63 (2006); *Admin. Comm.
of Wal-Mart Stores, Inc. Assoc.'s Heath and Welfare Plan v. Varco*, 338 F.3d
680, 687 (7th Cir. 2003)**.

23.   Further, the Supreme Court has made clear that "[a]n injunction should
issue only where the intervention of a court of equity is essential in order effectually
to protect property rights against injuries otherwise irremediable." ***Weinberger v.
Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal citation omitted)**.

24.   In deciding whether to grant Plaintiffs' Motion for Preliminary
Injunction, the Court must consider: (1) whether Plaintiffs' have demonstrated a
likelihood of actual success on the merits of their underlying claim; (2) whether there
is no adequate remedy at law; (3) whether Plaintiffs will suffer irreparable harm

which, without injunctive relief, outweighs any injury that Defendant will suffer if a preliminary injunction issues; and (4) whether the injunction will harm the public interest. ***Goodman v. Ill. Dep't of Fin. and Prof. Reg.***, **430 F.3d 432, 437 (7th Cir. 2005);** ***Abbott Labs. v. Mead Johnson & Co.***, **971 F.2d 6, 11 (7th Cir. 1992)**.

<u>Plaintiffs' Likelihood of Actual Success on the Merits</u>

25.    If it is proven that Defendant is not entitled to the $448,826.72 in "mistaken" Pension Plan payments, Plaintiffs will be entitled to a constructive trust and/or equitable lien over the Plan funds if such are properly identified and traceable to funds, assets or property in Defendant's possession. ***Sereboff*, 547 U.S. at 362-63; *Knudson*, 534 U.S. at 213-14; *Varco*, 338 F.3d at 687**.

26.    Defendant's signed Lump Sum Consent Form indicates her request to receive the death benefit, as the surviving spouse of her late husband, in one lump sum payment under the Pension Plan, equal to 90% of the contributions paid into the Plan on her husband's behalf during his tenure with the Plan (Doc. 6 - Verified Complaint, Ex. 1).  The March 17, 2009 letter from the Pension Administrator, Robert W. Vaughan, to Defendant, clearly indicates she was to receive a one-time lump sum payment in the amount (after taxes) of $56,103.34 (*Id*., Ex. 2). No evidence was introduced during the injunction hearing or is otherwise part of the record to contradict this fact.  Therefore, it is highly likely that Plaintiffs will prevail in showing that Defendant was not entitled, under the terms of the Plan, to the

following eight checks received from May 2009 through December 2009, that were "mistakenly" paid from the Pension Plan, in the amount of $448,826.72.

27.    If Defendant is not entitled to the $448,826.72 she received in "mistaken" Pension Plan payments, she would be considered unjustly enriched therefrom if Plaintiffs are not allowed to seek injunctive or other equitable relief against her.  **See Health Cost Controls v. Skinner, 44 F.3d 535, 538 n.7 (7th Cir. 1995); Reich v. Continental Cas. Co., 33 F.3d 754, 755 (7th Cir. 1994)**.

28.    As demonstrated via Plaintiffs' Memorandum Regarding Traceable Proceeds, Plaintiffs are able to identify traceable Plan proceeds to both funds and property in Defendant's possession for which they are entitled to seek reimbursement or, in the case of property, a constructive trust/equitable lien.

29.    Although Plaintiffs admit that they mistakenly caused the additional Pension Plan checks to be paid to Defendant, under the law, they are still allowed to seek equitable relief against Defendant.  **See, e.g., Employers Ins. of Wausau v. Titan Int'l, Inc., 400 F.3d 486, 491 (7th Cir. 2005) ("[T]he law does not permit a person to keep money that he has received by mistake.")**.

30.    In sum, Plaintiffs have demonstrated a likelihood of actual success on the merits.

Whether There is an Adequate Remedy at Law

31.    Under Section 502(a)(3) of ERISA, Plaintiffs are only permitted to seek equitable remedies in their attempts to enforce the terms of the Pension Plan as it

applies to the circumstances herein.  **29 U.S.C. § 1132(a)(3)**.

32.    If the remainder of the $448,826.72 in "mistaken" Pension Plan payments are further dissipated by Defendant, Plaintiffs may be unable to trace these assets or the proceeds therefrom.  As such,  Plaintiffs will be unable, under ERISA, to seek reimbursement from Defendant for funds it can no longer trace. ***Knudson, 534 U.S. at 213-14***.

33.    Although Defendant raises the possibility that Plaintiffs do have another adequate remedy at law – that is, to file suit against ABPA as the Plan's Administrator to reimburse the Plan funds it mistakenly paid to Defendant – this currently remains Defendant's supposition.  No evidence or other legal argument has been brought before the Court to substantiate it.

34.    Therefore, the Court finds that there is likely no other remedy at law available to Plaintiffs against Defendant, other than the equitable relief.

Irreparable Harm to the Parties

35.    Plaintiffs will suffer irreparable harm if the "mistaken" Pension Plan payments made to Defendant are further dissipated in a way that these funds or the proceeds therefrom are no longer able to be traced, in that the purpose of the equitable remedy sought (constructive trust and/or equitable lien) will be frustrated.

36.    Defendant, too, will likely suffer some harm if she is ultimately forced to sell her Ava house and/or her 2008 Pontiac Torrent.  However, if it is ultimately proven that Defendant is not entitled to the "mistaken" Pension Plan payments and

that the house and/or the vehicle were purchased, in whole or in part, with these traceable Plan funds, it is likely that Plaintiffs will be entitled to their equitable relief, otherwise Defendant will be unjustly enriched. *See Health Cost Controls***, 44 F.3d at 538 n.7;** *Reich***, 33 F.3d at 755**.

37.    The injunctive relief Plaintiffs seek will allow Defendant to continue reside in her Ava house and continue to use her 2008 Pontiac Torrent, but will enjoin her from transferring, disposing or otherwise encumbering these assets.

38.    Regarding the additional funds Plaintiffs claim are traceable to the $448,826.72 in "mistaken" Pension Plan payments made to Defendant, $319,502.19 has already been deposited with the Court from Defendant's Savings and Checking Accounts, pursuant to the February 8, 2010 order (Doc. 15).  In addition, Defendant stands ready to further deposit $40,000.00 with the Court, representing the amount of a loan she made to her father which she has since recouped.  Naturally, Defendant will not be able to access these funds while they remain with the Court for the duration of this proceeding, but she has not attempted to argue that she will suffer irreparable harm because of it.  In fact, the Court again notes Defendant has stated that she has no objection to a Preliminary Injunction being issued for the funds already held in deposit by the Court, pending the adjudication of Plaintiffs' Complaint (Doc. 27, ¶ 1).

39.    In sum, the Court finds the risk of irreparable harm to Plaintiffs if injunctive relief is not granted outweighs the risk of harm to Defendant if the preliminary injunction issues.

<u>The Public Interest</u>

40.     If Plaintiffs prevail in showing that Defendant is not entitled to the $448,826.72 in "mistaken" Pension Plan payments, she should not be allowed to retain any traceable funds as such would be unjust enrichment and allowing such a "reward" would go against the public interest.

41.     Issuing a preliminary injunction will aid in the preservation of the funds at issue in this suit.   Otherwise, as discussed above, further dissipation of these "mistaken" Pension Plan payments may frustrate the purpose of the equitable remedies sought by Plaintiffs.   Therefore, the Court finds injunctive relief will not harm the public interest.

## IV.  **Conclusion**

After careful consideration of the pleadings, testimony, and exhibits, the Court finds that Plaintiffs have demonstrated a likelihood of actual success on the merits and that they have no adequate remedy at law against Defendant.  The Court further finds that Plaintiffs will suffer irreparable harm which, without injunctive relief, outweighs any injury that Defendant will suffer if a preliminary injunction issues.  Finally, the Court finds that the issuance of a preliminary injunction in this case will not harm the public interest.

Accordingly,  the  Court  hereby  **GRANTS**  Plaintiffs'  Motion  for Preliminary Injunction (Doc. 5), as well as Plaintiffs' Renewed Motion for Preliminary Injunction (Doc. 26).

This Preliminary Injunction shall hereby issue against Defendant as follows:  Defendant and any person holding or controlling traceable proceeds from the $448,826.72 in Pension Plan payments, is temporarily enjoined and restrained from directly or indirectly transferring, disposing, or encumbering any portion of the traceable proceeds.  Specifically:

Defendant is temporarily enjoined and restrained from directly or indirectly transferring, disposing, or encumbering the 2008 Pontiac Torrent which is owned by Defendant.

Defendant is temporarily enjoined and restrained from directly or indirectly transferring, disposing, or encumbering the property owned by Defendant which is located at 202 S. Park St., Ava, Illinois, 62907.

The $206,802.19 balance in Defendant's Savings Account and the $112,700 from Defendant's Checking Account which have previously been deposited into the Court registry shall remain there until the adjudication of Plaintiffs' Complaint.

Defendant is further ordered to deposit the $40,000.00 in loan proceeds, currently held in her counsel's trust account, into the Court registry, pending the adjudication of Plaintiffs' Complaint.

Defendant is temporarily enjoined and restrained from directly or indirectly transferring, disposing, or encumbering any other traceable proceeds from the $448,826.72 in Pension Plan payments held in any savings account, checking account, retirement account, investment account, or any other financial account

owned by Defendant.

Lastly, the Court **DENIES** Plaintiffs' Motion for Expedited Ruling on the Merits (Doc. 26), finding that issues remain, as raised by Defendant, regarding whether Plaintiffs have a remedy against ABPA as the Plan Administrator and whether assets purchased with intermingled funds, such as the Ava house and the 2008 Pontiac Torrent, are properly recoverable in this action.  Therefore, the Court **REFERS** this case to Magistrate Judge Proud so that he may set a scheduling and settlement conference

**IT IS SO ORDERED**.

Signed this 7th day of April, 2010.

/s/  *David R Herndon*

**Chief Judge**
**United States District Court**